UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDY TOWLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00618-TWP-MPB |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Brandy Towle ("Towle") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

**I.     BACKGROUND**

**A.     Procedural History**

On March 29, 2013, Towle filed applications for DIB and SSI, alleging a disability onset date of March 1, 2011, due to attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), anxiety and depression. (Filing No. 13-2 at 2-5.) Her claims were initially denied on June 13, 2013, and again on reconsideration on August 23, 2013. *Id.* at 16, 26, 34. Towle filed a written request for a hearing on September 4, 2013. (Filing No. 13-3 at 10.) On

February 20, 2014, a hearing was held before Administrative Law Judge Angela Miranda (the "ALJ"), who appeared by video. ([Filing No. 14-2 at 20](#).) Towle was present and represented by counsel. *Id.* A vocational expert, Abbe May (the "VE"), appeared by telephone and testified at the hearing. *Id.* On September 23, 2014, the ALJ denied Towle's applications for DIB and SSI. *Id.* at 17-19. Following this decision, Towle requested review by the Appeals Council on November 22, 2014. *Id.* at 15. On January 21, 2016, the Appeals Council denied Towle's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id.* at 2-4. On July 20, 2016, Towle filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g).

B.      **Factual Background**

Towle was born on May 28, 1985. ([Filing No. 13-2 at 2](#).) At the time of her alleged disability onset date, Towle was twenty-five years old. *Id.* at 4. Towle filed her DIB and SSI applications at twenty-seven years old and she was twenty-nine years old at the time of the ALJ's decision. *Id.* at 47; ([Filing No. 16 at 3](#).) Towle has a high school education from an alternative school program. *See id*; ([Filing No. 13-2 at 48](#).) Prior to her alleged onset date, she had several short-term jobs. ([Filing No. 14-2 at 43-47](#).) The specific start and end dates of her employment are unclear from the record. Towle worked at Big Dog's Kitchen for two and one half months. *Id.* at 44. She stopped working at Big Dog's Kitchen because the owner no longer owned the business. *Id.* In 2008 through 2009, Towle worked at Wendy's for four and one half months as a cashier and food prepper. *Id.* at 45. Wendy's terminated Towle after she consistently missed days of work. *Id.* Towle also worked part-time at Crystal Catering for six months, Dollar General for five months, and Clancy's Restaurant for two years. *Id*. 45-46. Both Crystal Catering and Dollar General terminated Towle for missing days of work. *Id.* at 61. Towle stopped working at Clancy's

after moving to a different city and having her son. *Id*. at. 46.  In 2010, Towle was a self-employed babysitter and hair stylist.  *Id*. at 43.  She worked daily for an entire year. *Id*. at 44.  After the onset date, in 2012, Towle worked at a warehouse through Belcan Services for 210 hours, about twenty-six work days. *Id*. at 43.  The warehouse terminated Towle because she was in a lot of pain and refused to work late.  *Id*.  She most recently worked at MSIS Staffing in late 2013, for less than a month.  *Id*.  Since that time, Towle has not been employed. *Id*. at 47.

Towle is an avid tobacco smoker who has a long history of ADHD. ([Filing No. 13-6 at 37](#).) She was diagnosed with inattention and hyperactivity symptoms at age five and seven, respectively, because she often forgot daily activities, was easily distracted, lost things, was disorganized, failed to sustain attention, and she fidgeted and squirmed.  *Id.*  Towle's ADHD remained "well-controlled" because she took Adderall.  *Id.*  On August 10, 2012, Towle visited her primary care doctor, Matthew Overley, M.D., who determined that he was uncomfortable prescribing Adderall to Towle because of its addictiveness, among other reasons. *Id.* at 38.  Dr. Overley noted that he would continue to prescribe Adderall if Towle signed a controlled substance contract, her drug screen remained negative, and she visited a psychiatrist.  *Id*.  Dr. Overley then referred Towle to Gina Laite, M.D., but stated that he would prescribe Adderall until Towle could schedule a visit with Dr. Laite. *Id.*

Towle visited Dr. Overley the following month, on September 4, 2012,  and complained that Adderall worked well in the mornings but wore off by the afternoon. *Id.* at 35. Dr. Overley noted that Towle's hyperactive and inattentiveness improved, she was well groomed with age appropriate insight and judgement, and Towle maintained an estimated average range of intelligence.  *Id.*  Dr. Overley then adjusted Towle's Adderall, from once a day to twice daily. *Id*. at 36.  On October 4, 2012 and October 31, 2012, Towle visited Dr. Overley for ADHD treatment,

and upon examination, Dr. Overley determined that Towle maintained a negative drug screen and a normal mental status. *Id.* at 27-22, 32-33. During the October 4 visit, Towle complained about having to visit monthly as well as having to speak with a therapist in order to receive Adderall. *Id.* at 32. Dr. Overley noted that Towle failed to show up for her initial visit with Dr. Laite, but she prescribed Towle Adderall regardless, because the Adderall helped Towle properly care for her children and helped Towle keep jobs. *Id.* at 32-33. Dr. Overley informed Towle that he could not continue to prescribe a controlled substance if she did not show up for her appointments with specialists as instructed. *Id.* at 33.

On December 19, 2012, Towle visited Dr. Laite for an initial assessment regarding her ADHD. *Id.* at 18. Dr. Laite noted that Towle was irate because she was referred to a psychiatrist in order to obtain ADHD medications. *Id.* Dr. Laite also opined that Towle's December drug screen was positive and contained amphetamine. *Id.* Nonetheless, Dr. Laite refilled Towle's Adderall, but noted a concern with possible drug-seeking behaviors and Towle's hostility. *Id.* at 19. Dr. Laite recommended Towle follow up in three months. *Id.*

On February 14, 2013, Towle visited Yvonne Min, a licensed mental health counselor, and was diagnosed with mild Posttraumatic Stress Disorder ("PTSD"). *Id.* at 12-14. On March 27, 2013, Dr. Laite conducted a follow-up assessment with Towle and Towle reported that she was unable to keep a job. *Id.* at 4. Dr. Laite noted that Towle's concentration and energy decreased, but her anxiety and sleep disturbance had improved, and she was not as irritable. *Id.* Upon examination, Dr. Laite observed that Towle had a dysphoric mood, poor judgment, and minimal insight with an otherwise normal mental status exam. *Id.* at 5. Dr. Laite diagnosed Towle with ADHD, mood disorder, and PTSD. *Id.* She then refilled Towle's prescription for Adderall, as well as her prescriptions for Citalopram, Hydroxyzine and started Towle on Risperidone. *Id.*

4

On June 3, 2013, clinical neuropsychologist, Kenneth D. McCoy, Ph.D., H.S.P.P., examined Towle and determined that "[b]ased on mental status examination, [Towle's] reported attention problems, anxiety, and depression may interfere with" Towle's ability to perform a simple, repetitive task continuously for a two-hour period. *Id.* at 48. Dr. McCoy noted that Towle's verbal abilities, including knowledge base, judgment, and abstract thinking were average to below-average. *Id.* He also determined that Towle's memory was intact and she did not need any supervision. *Id.* Dr. McCoy diagnosed Towle with depressive disorder NOS, anxiety disorder NOS, as well as ADHD and PTSD by history. *Id.* at 48-49.

On June 13, 2013, Kenneth Neville, Ph.D. ("Dr. Neville"), reviewed Towle's file and opined that Towle's mental impairments were not severe and did not significantly limit her physical or mental ability to do basic work activities. (Filing No. 13-2 at 8.) Thereafter, on August 20, 2013, Joseph Pressner, Ph.D., reviewed Towle's file and affirmed Dr. Neville's opinion. *Id.* at 25.

On September 3, 2013, Towle presented to Dr. Overley in distress, reporting that her cell phone was stolen and "naked" pictures of her were posted on the internet. (Filing No. 13-10 at 32). Towle reported stress over her finances and that she had been looking out for jobs. *Id*. Dr. Overley opined that the internet incident triggered past incidents of trauma and assessed Towle with PTSD. He encouraged adherence to psychiatry and therapy appointments. *Id.*

On November 12, 2013, Towle visited Dr. Overley and requested an Adderall refill. (Filing No. 13-10 at 21.) Dr. Overley reminded Towle of the numerous psychiatric appointments she missed with Dr. Laite and refused to refill her Adderall prescription. *Id.* Dr. Overley noted that Towle became "really grouchy and sullen" when he would not refill her Adderall. *Id.* The following day, on November 13, 2013, Towle showed up an hour and a half late for her scheduled appointment with Dr. Laite. *Id.* at 19. Despite being ninety minutes late, Towle demanded to be

5

seen or to receive her medication. *Id.* Dr. Laite informed Towle that she missed multiple appointments and indicated that she would not continue prescribing a controlled substance if Towle failed to keep her appointments. *Id.* Dr. Laite examined Towle and noted that Towle was irritable and fidgety with poor judgment and minimal insight, but otherwise oriented with a coherent thought process. *Id.* at 19-20. Dr. Laite stated that Towle's primary source of dysfunction was her mood disorder, and opined that Towle would benefit from being approved for disability benefits. *Id.* at 20.

On February 12, 2014, Dr. Laite reported that Towle's Adderall refill was declined the prior month because Towle maintained multiple Hydrocodone prescriptions from different doctors, including one in Muncie, Indiana. *Id*. at 10. Towle stated that the month without Adderall was hard and Dr. Laite agreed to restart the Adderall prescription if Towle complied with the recommendations and filled her prescriptions at the same pharmacy. *Id*. Towle reported that her combination of citalopram, buspirone, and hydroxyzine helped her depression, and indicated that she did not want the medications changed. *Id.* Upon examination, Dr. Laite observed that Towle's memory was intact and her mood improved. *Id.*

On March 4, 2014, Dr. Overley noted that he referred Towle to a neurologist and to physical therapy, however, Towle failed to follow through with the referrals. *Id*. at 5. Dr. Overley opined that Towle could physically work eight-hour shifts after she completed his recommended medical treatments. *Id.* Dr. Overley also noted that Towle had no-showed sixteen times since June 2012, for scheduled appointments with physicians, counselors and for pulmonary function testing. *Id.* Dr. Overley further opined that he could not estimate how far Towle could walk or how long she could sit or stand in an eight-hour workday because Towle did not complete the physical therapy evaluation and treatment that he recommended. *Id.* at 6. Dr. Overley, however,

stated that he believed Towle had a very low capacity to tolerate work stress, but would defer to Towle's mental health professionals the issue. *Id*.

At the hearing before the ALJ, Towle testified that she transferred to an alternative school called Pacesetters because she could not concentrate around a lot of people, she did not get along with people, and her grades were failing. *Id.* at 49-50. Towle also testified that she does not have a problem getting a job, but she cannot keep a job because she calls off several times during the week due to her pain. *Id.* at 52. Towle explained that she has pain in her head, rib cage, directly below her breast, in her pelvic area and in her right knee. *Id*. at 54. She stated that the pain persists for three weeks out of one month and she has at least five appointments per month regarding her medication. *Id.* at 51. Powell is currently prescribed hydroxyzine, citalopram, buspirone, Adderall, ketapropin, nitrofurantoin, and promethazine. *Id*. at 52-53. Towle also stated that she has emotional problems and cannot control her sadness. *Id.* at 55. She testified that she missed work due to issues with depression that caused her to cry for no reason. *Id*.

Towle further testified that her typical day consists of her waking up, grooming herself, cooking breakfast, attending a class, taking her morning medication, watching television for thirty minutes, napping until 4:00 p.m., helping her son with homework, cooking dinner, taking her evening medication, and going to bed by 8:00 p.m. *Id.* at 58-59. She stated that she can follow simple directions, do simple math, clean, do laundry, and read, except in cursive. *Id.* at 50, 51, 60. Towle also testified that she would like to return to work, but jobs are limited because she has a felony conviction for transporting drugs. *Id.* at 60-61. Towle stated that the only jobs available to her are warehouse jobs, which cause her physical pain. *Id.* at 61.

During the administrative hearing, the VE testified about Towle's work history and current capacity to work. At the start of the VE's testimony, the ALJ asked, "do you understand that if

7

you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles ["DOT"] that you may advise us of that conflict and the basis for your opinion?" *Id.* at 67. The VE stated that he understood. *Id.* The VE then testified that Towle's past self-employment as a child monitor was semiskilled work with a medium exertional level and her employment as a hair braider was semi-skilled, sedentary work. *Id.* The ALJ presented a hypothetical to the VE based on Towle's age, education, work experience, and the following abilities:

> the capacity to lift and carry [twenty] pounds occasionally and [ten] pounds frequently, has the capacity to stand and walk six to eight hours in an eight-hour workday and to sit [six] to eight hours in an eight-hour workday. The individual has the unlimited capacity for pushing and pulling up to the capacity for lifting and carrying. The individual has the capacity for occasional exposure to dust, fumes and other pulmonary irritants. The individual has the capacity to understand, remember, and carry out… simple, routine tasks and, in so doing, has the capacity to use common-sense understanding to carry out instructions to deal with several concrete variables in standardized situations and is able to do that consistent with the demands of the normal workday schedule. The individual has the capacity to appropriately interact with co-workers, supervisors and the general public and has the capacity to identify and avoid normal workplace hazards and to adapt to routine changes in the workplace.

*Id.* at 69. The VE testified that the hypothetical person could not perform Towle's past work as a child monitor or hair braider. *Id.* The VE testified that such a person could, however, perform the jobs of a laundry worker, an office helper, and a mail clerk. *Id.* at 69-70. The ALJ tweaked the hypothetical and asked whether a person could perform the above jobs if the individual required two to four, fifteen minute, additional breaks. *Id.* at 70. The VE testified that such a person could not perform the above jobs or any other job. *Id.* The ALJ further asked whether there were any available jobs if an individual would be absent from work twenty percent of the time. *Id.* The VE again testified that there were no available jobs under those circumstances. *Id.* The ALJ lastly asked whether there were jobs available if an individual was off task while at work for twenty

percent of the time. *Id.* The VE testified that there were no jobs available or sustainable under those circumstances. *Id.* No further questions were asked of the VE.

Nearly nine months after the hearing and approximately two months after the ALJ's ruling, on November 19, 2014, Dr. Laite submitted a letter stating that she supported Towle's application for disability income based on the following observations:

1) [Towle] has attempted to work in the past. Her ongoing level of irritability and lack of impulse control interfere with her ability to get along with co-workers. She was fired from her last job (2012) with a temporary service because her co-workers felt threatened by her. As recently as today she was verbally abusive to clinic staff in our clinic; so much so that she is at risk of being dismissed from the clinic. She reports feeling easily overwhelmed by work tasks.
2) She has had to rely on the goodwill of friends and family for housing and financial support during the time I have known her. She is frequently homeless.
3) She is easily overwhelmed by ordinary stressors.
4) If her needs are not met as she expects she becomes explosive and verbally abusive.

([Filing No. 13-14 at 48](Filing No. 13-14 at 48).)

On January 14, 2015, Dr. Laite completed a form medical opinion stating that Towle is unable to meet competitive standards in the following abilities: maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently; dealing with stress of semiskilled or skilled work; and interacting appropriately with the general public. *Id.* at 49-50.

Dr. Laite opined that Towle had no useful ability to function in the following areas: working in coordination with or proximity to others without being unduly distracted; completing a normal workday and work week without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along

with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; and maintaining socially appropriate behavior. *Id*.

Dr. Laite further opined that, on average, Towle would miss more than four days per month of work due to her impairments or treatment and the earliest date that the symptoms and limitations outlined in the form opinion applied to was January 1, 2010. *Id.* at 50. Dr. Laite lastly opined that Towle has had lifelong attention deficit, a severe learning disability, and Towle's mood symptoms have been detrimental to Towle for at least five years. *Id.*

## II.    **DISABILITY AND STANDARD OF REVIEW**

Under the Act, a claimant may be entitled to SSI or DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.     THE ALJ'S DECISION

The ALJ first determined that Towle met the insured status requirement of the Act through March 31, 2014. The ALJ then began the five-step analysis and first determined that Towle had not engaged in substantial gainful activity since March 1, 2011, the onset date. At step two, the ALJ found that Towle had the following severe impairments: ADHD, mood disorder, depression, anxiety, asthma, chronic obstructive pulmonary disease (COPD) with tobacco use disorder, episodic bronchitis, and headaches with evidence of sinus disease. At step three, the ALJ concluded that Towle does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Towle had an RFC to perform light work, but with the following environmental and mental limitations:

> the claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8 hour workday. The claimant has no limitations in postural or manipulative abilities. Despite the claimant's continued tobacco use, the claimant should have only occasional exposure to dust, fumes, or other pulmonary irritants while in the workplace. Considering the limiting effects of the claimant's mental impairments and her subjective complaints of limited intellectual ability/educational achievement, mentally the claimant has the capacity to understand, remember, and carry out simple, routine tasks. In so doing, the claimant has the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. The claimant has the capacity to appropriately interact with supervisors, coworkers, and the general public. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

([Filing No. 14-2 at 25](Filing No. 14-2 at 25).) At step four, the ALJ found that Towle did not have any past relevant work. At step five, the ALJ determined that Towle was not disabled because there were jobs that existed in significant numbers in the national economy that Towle could perform, considering her age, education, work experience, and RFC. Those jobs included laundry worker, office helper, and mail room clerk. Therefore, the ALJ denied Towle's application for SSI because she was not disabled.

## IV.     DISCUSSION

In her request for judicial review, Towle asserts two reasons for remand. First, she alleges that the ALJ failed to satisfy the requirements of SSR 00-4p when questioning the VE. Specifically, Towle argues that the ALJ failed to ask the VE if her testimony was consistent with DOT. Second, she alleges that Dr. Laite's most recent letter and opinion is new and material

evidence which justifies remand for further proceedings. The Court will address each of these arguments in turn.

A.  **SSR 00-4p Requirements**

Towle asserts that the ALJ failed to satisfy SSR 00-4 requirements. Under SSR 00–4p, an ALJ has an "affirmative responsibility" to ask whether a VE's testimony "conflicts with information provided in the Dictionary of Occupational Titles" before relying on the VE's evidence to support a determination that a person lacks a disability. *Overman v. Astrue,* 546 F.3d 456, 462–63 (7th Cir. 2008) (quoting SSR 00-4p at 4). If evidence from a VE "appears to conflict with the DOT," SSR 00–4p requires further inquiry, specifically, an ALJ must obtain "a reasonable explanation for the apparent conflict." *Id*. at 463 (quoting SSR 00–4p at 5). A conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Id.*

Towle argues that the ALJ erred when asking the VE at the start of her testimony, "do you understand that if you give us an opinion that conflicts with the information in [DOT] that you *may* advise us of that conflict and the basis for your opinion?" (Filing No. 14-2 at 67) (emphasis added). Towle specifically takes issue with the ALJ's use of the word "may," and relies on *Prochaska* when contending that a VE has a definitive duty to explain when her testimony conflicts with DOT, rather than a tentative duty. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (holding an ALJ failed to comply with SSR 00–4p because the ALJ failed to ask whether a VE's analysis conflicted with DOT). Towle contends that the case should be remanded because the ALJ did not ask the VE whether her testimony was consistent with DOT following the VE's testimony.

In response, the Commissioner asserts that the ALJ did not err and, despite Towle's assertion that the ALJ should not have used the word "may," the Seventh Circuit "has not read a temporal requirement into the Ruling 00–4p and ha(s) refused to establish a singular method by

14

which ALJs must elicit potential conflicts." *See Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (finding no error in asking the SSR 00-4p question at the start of a VE's testimony, rather than at the end). The Commissioner further explains that even if the ALJ's use of "may" was an issue, Towle did not question the VE to identify whether there was a DOT conflict and Towle failed to identify or present any evidence that an apparent conflict exists. *See Overman,* 546 F.3d at 463 (it is Plaintiff's burden to show that any conflicts were "obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT").

The Court finds, as the Commissioner persuasively argued, that Towle has not presented evidence that inconsistencies exist between the VE's conclusions and the DOT. *See Prochaska*, 454 F.3d 731 (remanded on the issue of SSR 00-4 where an ALJ did not ask a VE whether his evidence conflicted with DOT and Plaintiff presented evidence of inconsistences). Even if the ALJ erred in using the word "may," without evidence of an apparent conflict, remand on this issue is **denied**.

**B.** **New Material**

Towle next argues that subsequent, material evidence exists, which warrants remand of this action. "[T]he court may…remand the case to the Commissioner…only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…" 42 U.S.C.A. § 405. Remand is appropriate only where new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review." *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989). Towle contends that Dr. Laite's letter and opinion obtained after the ALJ's hearing are material. Specifically, Dr. Laite determined that Towle's "ongoing level of

irritability and lack of impulse control interfere with her ability to get along with co-workers" and Towle "was fired from her last job (2012) with a temporary service because her co-workers felt threatened by her." (Filing No. 13-14 at 48.) On January 14, 2015, Dr. Laite also completed a form stating that Towle is unable to meet competitive standards in the following abilities: 1) maintaining attention for two-hour segments; 2) maintaining regular attendance and being punctual within customary, usually strict tolerances; 3) understanding, remembering, and carrying out detailed instructions; 4) setting realistic goals or making plans independently; 5) dealing with stress of semiskilled and skilled work; and 6) interacting appropriately with the general public. *Id.* at 49-50.

Dr. Laite also opined that Towle had no useful ability to function in the following areas: 1) working in coordination with or proximity to others without being unduly distracted; 2) completing a normal workday and work week without interruptions from psychologically based symptoms; 3) accepting instructions and responding appropriately to criticism from supervisors; 4) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; 5) dealing with normal work stress; and 6) maintaining socially appropriate behavior. *Id*. Towle argues that the Court should remand the case because Dr. Laite's opinion directly contradicts the ALJ's RFC assessment that Towle "has the capacity to appropriately interact with supervisors, coworkers, and the general public." (Filing No. 14-2 at 25.)

In response, the Commissioner contends that Dr. Laite's letter and opinion are not new or material. Evidence is "new" under § 405(g), only if it did not exist or was not available to Towle at the time of the ALJ proceeding. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). The Commissioner first argues that Dr. Laite's letter and opinion are not new because it was established after the ALJ issued her decision denying Towle's disability and was based on evidence already

included in the administrative record before the ALJ. The Commissioner explains that it is well-established under the Seventh Circuit that opinions based on and interpreting evidence included in the administrative record does not qualify as "new" under § 405(g). *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) (holding a report written after an ALJ's decision, based on evidence available before the ALJ's decision, was not new); *Mowery v. Apfel*, 202 F.3d 274 (7th Cir. 2000) (unpublished) (holding a psychiatric report based on prior records and on post-hearing meetings with claimant were not new); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (holding a medical evaluation conducted after an ALJ's decision, based on evidence that had long been available, was not new); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (holding a physician's letter written after an ALJ's decision was not new evidence that could be considered on remand because the physician's medical conclusion was based on information that was part of the administrative record). The Commissioner also contends that Towle failed to explain how Dr. Laite's letter and opinion are relevant to Towle's condition during the relevant time period.

In reply, Towle argues that Dr. Laite's letter and opinion are not based entirely on evidence that has long been available because the opinion was created after Towle verbally abused Dr. Laite's clinic staff. Towle also contends that the evidence is relevant to the adjudicated time period because her disability onset date is March 1, 2011, and Dr. Laite specified in her opinion that Towle's limitations dated back to June 1, 2010.

After reviewing the record, the Court concludes that remand is not warranted because, despite Dr. Laite writing her letter and opinion after Towle verbally abused her staff, the letter and opinion were not based on that incident or any new, material evidence. Dr. Laite's determinations regarding Towle's ability to meet competitive standards and her ability to function at work, were based on evidence that was part of the administrative record and available prior to the ALJ's

hearing. Similar to Dr. Laite's opinion, included in the administrative record were: 1) Dr. Overley's and Dr. Laite's previous observations of Towle's noncompliance and irritability; 2) Dr. McCoy's determination that Towle's attention problems, anxiety, and depression may interfere with Towle's ability to perform a simple, repetitive task continuously for a two-hour period; 3) Dr. Overley's statement that he believed Towle had a very low capacity to tolerate work stress; and 3) Towle's testimony during the ALJ hearing about her previous difficulties concentrating, getting along with people, and attending work daily. "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *See Sullivan*, 496 U.S. at 626. Accordingly, the Court finds that the information contained in Dr. Laite's November 2014 letter and opinion is not "new" under § 405(g).

Towle also contends that the ALJ should have contacted Dr. Laite for clarification prior to denying her claim for disability because Dr. Laite previously stated, on November 13, 2013, that Towle "would benefit from being approved for SSI." In response, the Commissioner relies on *Simila* when explaining that "[a]n ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings" and the ALJ "need not re-contact the source every time she undertakes such an evaluation, but only if…'the medical support is not readily discernable.'" *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (citing *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)); *see also Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability...."). The Commissioner argues that Dr. Laite's opinion was clear, complete and readily discernable, but the ALJ gave less weight to the opinion

because it was inconsistent with the record evidence. The Court finds, because Dr. Laite's statement was adequate and discernable, the ALJ was not required to contact Dr. Laite. Additionally, the ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck*, 357 F.3d at 700 (7th Cir. 2004). Accordingly, remand is not warranted on this issue.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED** and Brandy Towle's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 12/29/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Norman Lamont Reed
ATTORNEY AT LAW
reedsmithlaw@aol.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov